CHICAGO—FIRST DISTRICT—JANUARY, 1921.    453

Commercial Cabinet Co. v. North B. & M. Ins. Co., 220 Ill. App. 453.

Commercial Cabinet Company, Appellee, v. North British & Mercantile Insurance Company of London and Edinburgh, Appellant.

Gen. No. 25,761.

INSURANCE, § 447*—*when insured is not guilty of making false statements.* The mere fact that an assured in the proofs of loss has made an overvaluation of the property destroyed is insufficient to establish that the assured was guilty of fraud or false swearing rendering policies of insurance void under their terms, where the values mentioned in the proofs represent the honest opinion, estimate, or belief of the assured.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Affirmed. Opinion filed January 28, 1921.

CHARLES B. OBERMEYER, for appellant.

FRANCIS M. LOWES, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Three separate actions in assumpsit were commenced on the same day by the plaintiff corporation in the circuit court of Cook county on three fire insurance policies aggregating the sum of $10,500. The policies, issued by the defendant insurance company, are alike except as to the amount of the insurance covered and the time of expiration, and are of the form commonly known as the New York Standard Form, and insured plaintiff against loss or damage by fire on the contents of the premises occupied by plaintiff (a brick building known as Nos. 2232-40 Ogden Avenue, in Chicago, Illinois), the word "contents" being declared to include "all property belonging to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

said insured, incidental to their business, which is chiefly manufacturing of furniture.and 'cabinet work.''

A fire occurred in the premises on January 4, 1914, while all three policies were in force. Plaintiff, in compliance with the conditions of the policies, gave defendant notice of the loss and afterwards executed and delivered to defendant proofs of loss, sworn to by its president, Louis Kirmse, in which it was stated, *inter alia,* that the fire caused a loss to the property insured to the amount of $23,182.84, and that the actual value of plaintiff's property contained in the premises at the time was $23,682.84.

One of the three actions, being on a policy for $5,000, was tried before a jury in October, 1917, resulting in a verdict for plaintiff in the sum of $1,991.45. The jury made a special finding, No. 1, that the actual cash value of the property at the time of the fire was $8,864.24, and another special finding, No. 2, that the actual amount of damages and loss of property occasioned by said fire was $8,364.24. Both parties moved for a new trial. Subsequently the defendant withdrew its motion for a new trial, but the court granted a new trial on plaintiff's motion.

Subsequently, by agreement of the parties, the three actions were consolidated and submitted to the court for trial without a jury, and after a lengthy hearing the court, on July 8, 1919, found the issues for the plaintiff and assessed its damages at the sum of $7,252.58, and entered the judgment appealed from for that amount. At the request of the defendant the court returned a special finding, No. 1, that the aggregate actual cash value of plaintiff's property at the time of and immediately preceding the fire was $12,008.27, and another special finding, No. 2, that the aggregate actual amount of loss and damage to plaintiff's property by the fire was $11,508.27. It appears that at the time of the fire plaintiff carried additional insurance on the same property, amounting to $10,500,

in four other insurance companies, making a total of $21,000 of insurance in force at that time.

The pleadings in the three consolidated actions were substantially the same. Plaintiff's declaration in each consisted of several special counts and the common counts. In the special counts the particular policy was set out *in hæc verba,* or in substance, and it was alleged that the property insured was destroyed by the fire, that plaintiff had given defendant notice thereof and had furnished proofs of loss and had complied with all conditions of the policy, but that defendant had refused to pay the loss. Defendant filed a plea of the general issue, and four verified special pleas to which plaintiff filed replications. In the first special plea defendant averred that plaintiff, in its sworn statement purporting to be proofs of loss, "wilfully and knowingly falsely stated the amount of the loss and damage occasioned by the said fire to be more than $18,000; whereas in truth and in fact, as plaintiff well knew, the actual amount of the loss and damage * * * did not exceed the sum of $6,000." In the second special plea defendant averred that plaintiff after the fire made and furnished to defendant a certain statement in writing, sworn to, in which it "wilfully and knowingly stated the amount of the loss and damage occasioned by the fire to be very much more than in fact the same was and was known by the plaintiff to be; and that the plaintiff further in said sworn statement included and claimed that ·a great many articles and things were contained in the premises * * * and either damaged or destroyed by said fire which in fact were not in said premises at the time of the fire, and which were, at the date of said sworn statement, known by the plaintiff not to have been in said premises at the date of the fire."

Each policy contained the following provisions, among others:

"This company shall not be liable beyond the ac-

456    APPELLATE COURTS OF ILLINOIS.

Commercial Cabinet Co. v. North B. & M. Ins. Co., 220 Ill. App. 453.

tual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or *estimated* according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the *insured* to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers as herein provided, * * * ."

"This entire policy shall be void * * * in case of any fraud or false swearing touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

"If fire occur, the insured, * * * within sixty days after the fire, * * * shall render a statement to this company, signed and sworn to by the said insured, stating the knowledge and *belief* of the insured as to * * * the interest of the insured and of all others in the property, the cash value of each item thereof and the amount claimed thereon, * * * ."

"The insured, as often as required, shall * * * submit to an examination under oath by any person named by this company, and subscribe the same; and as often as required shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, * * * and shall permit extracts and copies thereof to be made."

"This company shall not be liable under this policy for a greater proportion of any loss on the described property * * * than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, * * * ."

After the fire, plaintiff employed an adjuster named Gadsden to present its claim for loss to the five companies in interest, and defendant and all the other companies (excepting one, which made a settlement with plaintiff) employed an adjuster named Buenemann to represent them. The adjusters met for the

first time on January 21, 1914, and negotiations continued for several months. On January 27, 1914, plaintiff and defendant entered into a so-called "nonwaiver agreement," the effect of which was to save the rights of both parties pending a settlement and wherein it was agreed that in the event of failure to agree upon the amount of the loss and damage said amount should be determined by appraisal as provided in the policies. On February 20, 1914, plaintiff delivered to defendant the proofs of loss above referred to. On March 5, 1914, various written objections thereto, as well as the request for additional proofs, were made by defendant. On March 13, 1914, plaintiff wrote defendant stating that if the matter was going to be referred to appraisers plaintiff demanded that this be done forthwith. On March 17, 1914, defendant replied that "as there has been no disagreement, your demand for reference to appraisers is premature." Subsequently plaintiff furnished additional estimates of loss, and further correspondence and negotiations were had. On April 22, 1914, pursuant to notice and under a provision of the policies, Kirmse, president of plaintiff, appeared before a notary public, produced certain books of account and papers, and submitted to an examination under oath by defendant's adjuster, Buenemann. Defendant finally refused to make any payments to plaintiff under the policies.

The sole contention made and argued by counsel for defendant in this court is, in substance, that the finding and judgment are against the manifest weight of the evidence, in that the evidence clearly shows that the insured was guilty of fraud and false swearing in making the proofs of loss, which under the terms of the policies render the same void and unenforceable, and that, hence, the judgment should be reversed with an appropriate finding of facts.

Counsel for plaintiff, on the contrary, here contends that the evidence does not disclose that plaintiff was

458    APPELLATE COURTS OF ILLINOIS.

Commercial Cabinet Co. v. North B. & M. Ins. Co., 220 Ill. App. 453.

guilty of such fraud or false swearing in making said proofs of loss sufficient to render the policies void under their terms, because the values mentioned in said proofs were but the opinion, "estimate," or "belief" of the party making them as to what it would cost the "insured" to replace the property destroyed, which opinion, estimate or belief was honest.

In *Merchants & Mechanics Ins. Co. v. Schroeder,* 18 Ill. App. 216, 219, it is said:

"Estimates as to the value of property are ordinarily not statements of fact, but mere matters of opinion, upon which different persons may differ very widely, and as to which the same person, even when making his estimate at different times and in the light of different facts, may honestly reach conclusions very wide apart."

In *Rockford Ins. Co. v. Nelson,* 75 Ill. 548, 553, our Supreme Court says:

"The burden of appellants' complaint seems to be that appellee * * * made a false statement of values in her preliminary proof of loss; and this, they urge, is illustrated by the finding of the jury, that being much less than her sworn statement of values. This proves nothing. How often is it a jury finds values much less than the witnesses put them at? * * * We cannot say their verdict is against the evidence; certainly not to such an extent as to justify our interference, especially after two trials."

In *Commercial Ins. Co. of California v. Friedlander,* 156 Ill. 595, 598, it is said:

"In regard to the first point relied upon, it is claimed in the argument that as the assured, in their proofs of loss, estimated the amount at $9,840 and the jury returned a verdict for only the sum of $1,277.80, the discrepancy is sufficient to establish a fraudulent over-valuation, within the meaning of the policy. The mere fact that the assured, in the proofs of loss, has made an over-valuation of the property destroyed will not defeat a recovery on the policy for the actual loss sustained. If the assured, in making proofs of

loss, acts in good faith, in an honest belief that the property destroyed was worth the amount of the valuation placed upon it, and the excessive valuation was not intended to deceive or defraud the insurance company, such over-valuation cannot be held to be fraudulent, and it will not defeat a recovery."

Much evidence was introduced on the second trial by both parties and the bill of exceptions before us is very voluminous. No useful purpose will be served in a discussion of the evidence. Suffice it to say that we have reviewed the abstract of the record and the arguments of respective counsel and are unable to say that the finding of the court is against the manifest weight of the evidence on the question whether the insured was guilty of fraud and false swearing in making the proofs of loss. The issue was raised in the pleadings; it was passed upon unfavorably to the defendant by a jury in the first trial on one of the policies in question; and it was passed upon again unfavorably to the defendant by the court (a jury having been waived) on the evidence contained in the present record.

The judgment of the circuit court is affirmed.

*Affirmed.*

BARNES, P. J., and MATCHETT, J., concur.